IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON BODE, Individually and as Special Administrator of the Estate of DAVID L. BODE, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 13-cv-1310-SCW<br>) |
| vs. | )<br>) |
| AERCO INTERNATIONAL, INC., et al., | ) |
| Defendants. | |

**ORDER**

**WILLIAMS, Magistrate Judge:**

Before the Court is Plaintiff's Motion to Enter Order of Dismissal and Motion to Remand (Docs. 22 & 23). On December 18, 2013, Plaintiff brought this suit against Defendants in the Circuit Court, Third Judicial Circuit, Madison County, Illinois alleging tort claims related to wrongful death arising from asbestos. (Doc. 1). Subsequently, on December 18, 2013, Defendant Consolidated Aluminum ("Conalco") sought to remove the action to this Court as being related to Conalco's bankruptcy already pending in the United States District Court for the District of New Jersey. (Doc. 2). Plaintiff filed a formal motion to dismiss Conalco from the suit and to remand the case back to state court. (Docs. 22 & 23). Along with the motion, Plaintiff attached a Stipulation of Dismissal without Prejudice and Withdrawal of Notice of Removal and Stipulation to Remand (Doc. 22 Ex. A). The stipulation and motions for dismissal and remand are ripe for review.

For the following reasons, Defendant Consolidated Aluminum Corporation is **DISMISSED** without prejudice, and Plaintiff Bode's Motion to Remand is **GRANTED**.

DISCUSSION

## I. Voluntary Dismissal

The Federal Rules of Civil Procedure permit a plaintiff to voluntarily dismiss claims without a court order by filing a stipulation for dismissal. **Fed. R. Civ. P. 41(a)(1)(A)**. Plaintiff and Conalco have entered such a stipulation.[1] (Doc. 22 Ex. A). Additionally, Plaintiff also filed a Motion to Dismiss under 41(a)(2). (Docs. 22 & 23). However, since a stipulation has been filed, and no other parties have objected to the stipulation or to the Motion to Dismiss, the Court finds the stipulation itself to be sufficient and need not take up the motion. Therefore, the case against Consolidated Aluminum Corporation is **DISMISSED** without prejudice pursuant to Federal Rule 41(a)(1). All parties shall bear their own costs. The Motion to Dismiss is now moot.

## II. "Related to" Jurisdiction over Non-Bankruptcy Claims

Plaintiff has not contested the subject matter jurisdiction of the District Court here; however, federal courts may raise issues of subject matter jurisdiction *sua sponte*. *Hay v. Indiana State Bd. of Tax Comm'rs*, **312 F.3d 876, 879 (7th Cir. 2002).** The Court holds that subject matter jurisdiction does not exist over the claims by Plaintiff against defendants other than Conalco, even if Conalco had not been dismissed from the suit.

### A. 28 U.S.C. § 1452(a)

Defendant Conalco sought removal under two statutes: **28 U.S.C. § 1452(a)** and **§ 157(b)(5)**. Section 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334" of Title 28. Section 1334 states that federal courts have jurisdiction over claims or causes of action "arising under" or "related to" the bankruptcy code. **28 U.S.C. § 1334(b)**. Plaintiff's claims do not arise under federal

---

[1] In their stipulation, the parties cite incorrectly to Federal Rule 41(a)(2). (Doc. 23). The rule governing such stipulations is 41(a)(1)(A)(ii).

bankruptcy law because they are non-core[2] state law tort claims. *See In re ALT Hotel, LLC,* **479 B.R. 781, 506 (Bankr. N.D. Ill. 2012).** Therefore if subject-matter jurisdiction in this Court exists, it must be under the "related to" jurisdiction listed in the statute. Different circuits have adopted varying tests for determining whether a claim or cause of action is "related to" a Title 11 case. The majority of circuits follow the standard established by the Third Circuit,[3] where defendant Conalco's Chapter 11 bankruptcy case is currently pending. **(Doc. 2)**. However, the Seventh Circuit has adopted a more limited test. In this circuit a case is related to a bankruptcy when the dispute "affects the amount of property for distribution or the allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). *See also In re ALT Hotel*, 479 B.R. at 806. "Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors." *In re IFC Credit Corp.*, 431 B.R. 802, 805 (Bankr. N.D. Ill. 2010) (quoting *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989)) (internal quotation marks omitted). The Seventh Circuit has been steadfast over the years in maintaining this narrower standard for "related to" jurisdiction. *See Home Ins. Co.*, 889 F.2d at 749 **(stating that its narrow reading of "related to" jurisdiction is done "not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involving persons not party to the bankruptcy");** *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992) (adhering to the narrower standard); *In re FedPak Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ("[W]e

---

[2] A core proceeding under the bankruptcy code is one that "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Contrastingly, a non-core proceeding is one that "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *Barnett*, 909 F.2d at 981 (quoting *In re Wood*, 825 F.2d at 97). The claims at issue here are state law claims not created by federal bankruptcy law, thus rendering the suit a non-core proceeding.

[3] "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)) **(emphasis in original)**.

believe that common sense cautions against an open-ended interpretation of the "related to" statutory language 'in a universe where everything is related to everything else.'") (quoting Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction*, 112 Banking L.J. 957 (Nov.–Dec. 1995)).

Several defendants in this action have filed cross-claims for contribution or indemnity against the other defendants. *See e.g.*, (Doc. 14–17). Lower courts within the Seventh Circuit have held that non-debtor claims for contribution or indemnification do not meet the "related to" jurisdiction standard. *See In re Doctors Hospital of Hyde Park, Inc.*, 308 B.R. 311, 217–18 (Bankr. N.D. Ill. 2004) ("The mere possibility that a creditor might recover from a non-debtor and thereby reduce the amount of the creditor's claim against the debtor is not sufficient to bring that claim within the 'related to' jurisdiction of the court."); *In re Green*, 210 B.R. 556, 560 (Bankr. N.D. Ill. 1997) ("The mere possibility of some effect from an indemnification claim is not enough to pose "related to" jurisdiction."); *In re Spaulding & Co.*, 111 B.R. 689, 692–95 (Bankr. N.D. Ill. 1990) (Third-party complaint for indemnification was not "related to" bankruptcy); *but see In re Salem Mills, Inc.*, 148 B.R. 505, 510 (Bankr. N.D. Ill. 1992) (holding that a third-party action was related to the underlying bankruptcy case even though the debtor was no longer a litigant). In the asbestos context specifically, the Bankruptcy Court in *Nickum v. Brakegate, Ltd.* held that an asbestos defendant's contribution claim against a third-party debtor was not "related to" the debtor's bankruptcy. **128 B.R. 648, 652 (Bankr. C.D. Ill. 1991).** There, the court noted that the debtor's bankruptcy estate would not necessarily be affected if the defendant was found liable in the asbestos action. *Id.* at 651. Assuming liability, the bankruptcy estate would not be touched until the defendant tried and won its contribution claim against the debtor. *Id.* at 652. The court noted that "a judgment *either way* in the primary action…[would] not subject…[the debtor] to any liability." *Id.* Additionally, it is important

4

to note, that in its decision, the *Nickum* court was applying the broader Third Circuit standard, and still held that no jurisdiction existed. *See id.* **at 650.**

Like *Nickum* and the other listed cases finding a lack of jurisdiction, here, there is only a possibility that Codefendants could recover from debtor Conalco. Conalco's bankruptcy estate would not necessarily be affected upon a finding of liability in this suit. Assuming any of the codefendants were held liable, to recover from Conalco, they would then have to turn around and try a contribution claim in a separate action against the debtor. This Court takes heed of the Seventh Circuit's caution "against an open-ended interpretation…'in a universe where everything is related to everything else,'" *In re Fed Pak Systems*, **80 F.3d at 214**, and holds that such a tenuous link to Conalco's bankruptcy does not come under federal jurisdiction.

**B. 28 U.S.C. § 157(b)(5)**

Defendant Conalco also argued that **28 U.S.C. § 157(b)(5)** mandates removal. (Doc. 2). However, a fair reading of the statute in its context demonstrates that § 157(b)(5) does not speak to removal.

> Section **157(b)(5)** reads:
>
> > The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district in which the bankruptcy case is pending.

A court may not read more into a statute than the statutory language naturally supports, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, **559 U.S. 573, 604 (2010)**, and the words of a statute must be read in the context of the overall statutory scheme. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, **559 U.S. 280, 304 (2010).** A plain reading of § 157(b)(5) in context does not indicate any mandate of removal. Looking at § 157 as a whole, subsection (b)(5) is part of a statutory scheme establishing the parameters between the district courts

5

and bankruptcy courts for suits and proceedings already within bankruptcy jurisdiction. For example, **§ 157(a)**, provides that district courts may order the referral of any or all cases and proceedings under or related to Title 11 to bankruptcy judges in the district; sections **157(b)(1)–(4)** establish parameters regarding the authority of the bankruptcy judges to hear "core" and "non-core" proceedings; and **§ 157(e)** discusses the bankruptcy judge's authority to conduct jury trials. Viewed in light of the other provisions of § 157, "subsection (b)(5) delimits the scope of jurisdiction as between…[bankruptcy] courts and Article III courts" in regards to personal injury suits related to a bankruptcy—nothing more. *Kinder v. Wisconsin Barge Line, Inc.*, **69 B.R. 11, 13 (E.D. Mo. 1986) (citing** *In re Johns-Manville Corp.*, **45 B.R. 823 (S.D.N.Y. 1984))**. This subsection is not a separate mechanism by which a defendant may remove a cause of action to federal court; rather, it establishes which court in which venue must hear a personal injury or wrongful death action that is within bankruptcy jurisdiction. Subsection (b)(5) establishes that such actions must be heard in the district courts as opposed to the bankruptcy courts. *In re Johns-Manville Corp.*, **45 B.R. at 825**. For these reasons, this Court is not required under § 157(b)(5) to remove claims that are part of the instant action.

For the preceding reasons, the Court holds that it lacks subject matter jurisdiction over the remaining claims.

### III. EQUITABLE REMAND

Assuming, *arguendo*, that this Court did not lack jurisdiction over the remaining claims, the Court would nonetheless remand the claims back to state court. Conalco has stipulated to withdraw its Notice of Removal and agree to remand. (Doc. 22 Ex. A). Though there has been no case law cited that suggests that a stipulation of agreement is sufficient to deprive the federal courts of jurisdiction, Conalco's dismissal changes the status quo. Conalco is the only defendant who originally removed this case to federal court, (Doc. 2), and no other Defendants have informed the

Court that they oppose remand since the stipulation has been filed. With Conalco gone, and no other parties opposing remand, there is no reason for this Court to retain the case, even assuming jurisdiction exists.

Further, assuming jurisdiction existed under **28 U.S.C. § 1452(a)**, Subsection (b) of 1452 establishes when a district court may remand a case removed under 1452. That subsection states that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." **§ 1452(b)**. Equitable remand allows a federal court to remand a case removed in bankruptcy on "'any appropriate ground.'" *Kim Littlefield, DMD P.C. v. Orthodontic Centers of Illinois, Inc.*, **2007 WL 273766, at \*2 (S.D. Ill. Jan. 26, 2007) (citing** *In re United States Brass Corp.*, **110 F.3d 1261, 1265 (7th Cir. 1997))**. The lower courts within the Seventh Circuit have developed a factors test for determining whether equitable remand under 1452(b) is appropriate. In deciding the issue of equitable remand, a court must weigh: (1) the extent to which judicial resources will be duplicated or inefficiently used; (2) whether remand will adversely affect the administration of the bankruptcy estate; (3) whether the case involves state law issues better addressed by a state court; (4) comity questions; (5) whether there is prejudice to unremoved parties; (6) whether the remand lessens the possibility of inconsistent results; and (7) whether the court in which the action originated has greater expertise. *Kim Littlefield, DMD P.C.*, **2007 WL 273766, at \*2;** *Dalen v. Clamage*, **1997 WL 652343, at \*6 (Bankr. N.D. Ill. Oct. 10, 1997) (citing** *Baxter Healthcare Corp v. Hermex Liquidation Trust,* **132 B.R. 863, 867–68 (Bankr. N.D. Ill. 1991)**. The factors are to be flexibly weighed according to the circumstances of each case. *Kim Littlefield, DMD P.C.*, **2007 WL 273766, at \*2**. The decision regarding remand is committed to a court's discretion. *Id.*

The entirely state-law nature of the remaining claims is the driving force weighing in favor of equitable remand. This District is generally of the view that "whenever possible, state courts should

decide issues of state law, particularly when, as here, state-law claims were sued on originally in state court." *Klohr v. Martin & Barley, Inc.*, 2006 WL 1207141, at *5 (S.D. Ill. May 4, 2006). This view also extends to bankruptcy claims specifically. *See Kim Littlefield, DMD P.C.,* 2007 WL 273766, at *3 ("[I]n cases related to a bankruptcy, 'questions of state law should be decided by the state courts rather than by a federal court.'") (quoting *In re U.S. Brass Corp.*, 110 F.3d at 1265).

Adjudication of these state law claims is better left to a state court, and the need for involvement of the federal courts is minimal. Again, as stated above in the discussion regarding jurisdiction, since the remaining claims do not "arise under" federal bankruptcy law, reasonably, the only possible link to Conalco's bankruptcy is through the codefendants' cross-claims for contribution. However, liability on the contribution and indemnification claims would not immediately affect the bankruptcy estate. *Nickum*, 128 B.R. at 651. Those claims would have to be separately tried after the defendants were first found liable. *Id.* at 652. Such a tenuous link of state law claims to Conalco's bankruptcy estate does not warrant the exercise of federal jurisdiction. In a situation such as the present case, where the claims are governed entirely by state law, comity and federalism interests both favor remand. *See Futch v. AIG, Inc.*, 2007 WL 1752200, at *5, *6 (S.D. Ill. June 15, 2007).

An examination of other factors in the equitable remand test demonstrate that remand is appropriate. First, there is no indication that remand will adversely affect the administration of the bankruptcy estate. The bankruptcy court likely has been, or certainly could be, notified of this pending action, *Fuller v. A.W. Chesterton, Inc.*, 2009 WL 2855368, at *3 (S.D. Ill. Sept. 3, 2009), and proceedings could be coordinated between the state and federal court, if necessary. Further, the bankruptcy trustee has equal access to judgments, awards, or settlements in both federal and state court. *Beasley v. Personal Finance Corporation*, 279 B.R. 523, 534 (S.D. Miss. 2002).

Second, remand is in the interest of judicial efficiency. The case is in a very early stage, and this Court has devoted minimal resources to the dispute. It does not make sense for the Court to expend time and resources, where it has so far invested very little, on a case having a minimal relation to federal law. See *Futch*, **2007 WL 1752200, at \*6 (noting, in granting remand, the minimal resources expended by the district court to that date)**.

Finally, the experience of the Madison County Circuit Court with asbestos cases specifically, weighs in favor of remand. It is true that in the United States' system of coordinate courts, both state and federal courts are presumed competent to adjudicate the law. See *e.g., Ruhrgas AG v. Marathon Oil Co.*, **526 U.S. 574, 586 (1999);** *Tafflin v. Levitt*, **493 U.S. 455, 469–70 (1990) (Scalia, J., concurring)**. Whether or not the Madison County Circuit Court has more "expertise" than this Court in applying the law in asbestos-related cases, the state court certainly has more experience with such cases. See **Steve Horrell,** *Asbestos Cases Increase by 610*, **THE EDWARDSVILLE INTELLIGENCER (Jan. 9, 2013, 12:00 PM) (stating the number of asbestos cases filed in Madison County in 2012 to be 1,563),** http://www.theintelligencer.com/local_news/article_4f5ae3e8-5a7d-11e2-9a8c-001a4bcf887a.html. Again, efficiency and comity demand that a state court that already hears a great number of state-law asbestos claims each year, is the better court to hear the present state-law asbestos claims having little if any relation to federal law.

Therefore, the Court finds that even if it had jurisdiction over the remaining claims, those claims would nonetheless be remanded under **28 U.S.C. § 1452(b)**.

## CONCLUSION

For the foregoing reasons, the Clerk of the Court is **DIRECTED** to **DISMISS** Consolidated Aluminum Corporation **without prejudice**. Additionally, the Motion to Remand (Docs. 22 & 23) is **GRANTED**. The remaining claims and defendants are **REMANDED** to the

Third Judicial Circuit state court, Madison County, Illinois, Case No. 13-L-495. The remaining motions will remain pending for resolution by the state court judge.

      **IT IS SO ORDERED.**
      **DATE: April 24, 2014**                                                    /s/ *Stephen C. Williams*
                                                                                       **STEPHEN C. WILLIAMS**
                                                                                       United States Magistrate Judge